# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ROWENA TACHIAS and MONIQUE DERETA,

          Plaintiffs,

v.

LOS LUNAS SCHOOLS BOARD OF EDUCATION, BRYAN SMITH, in his individual capacity and in his official capacity as President for the Los Lunas Schools Board of Education, ELOY GIRON, in his official capacity as Vice President of the Los Lunas Schools Board of Education, STEVEN OTERO, in his official capacity as Secretary of the Los Lunas Schools Board of Education, FRANK OTERO, in his individual and official capacity as a member of the Los Lunas Schools Board of Education, P. DAVID VICKERS, in his official capacity as a member of the Board of Education, and DANA SANDERS, in her individual capacity,

          Defendants.

Civil Action No. 1:21-cv-00085-JB-JFR

## RESPONSE IN OPPOSITION TO DEFENDANT DANA SANDERS'S MOTION FOR SUMMARY JUDGMENT ON THE BASIS OF QUALIFED IMMUNITY

Defendant Dana Sanders moves this Court to enter summary judgment in her favor on the basis of qualified immunity. But Plaintiffs make out a prima facie case of First Amendment retaliation that prevents the Court from doing so, and requires the Court to deny and dismiss the Motion for Summary Judgment on the Basis of Qualified Immunity [Doc. 24] ("MSJ"). Sanders does not dispute the first two elements: (i) that Plaintiffs engaged in constitutionally protected activity; and (ii) that the cease-and-desist letters were legal harassment that caused the Plaintiffs to suffer an injury that would chill a person of ordinary firmness from continuing to engage in

that activity. *See Jarita Mesa Livestock Grazing Assn. v. U.S. Forest Service*, 921 F. Supp. 2d 1137, 1187-88 (D.N.M. Jan. 24, 2013). And in relation to the third element, Sanders admits that she was motivated to trademark "Los Lunas Schools" and send the cease-and-desist letters to Plaintiffs threatening to sue them if they didn't remove the Facebook page they administer because of the viewpoints and contents of the speech on the page: she admits that she was "concerned about mis-information and rumormongering on Plaintiffs' Facebook site." MSJ at 21. Thus, Sanders admits that "the [Plaintiffs'] exercise of the constitutionally protected activity substantially motivated the defendant's adverse action." *Jarita Mesa Livestock Grazing Assn.*, 921 F. Supp. 2d at 1188.

Moreover, the temporal proximity of Sanders's plan to trademark "Los Lunas Schools" and the cease-and-desist letters sent to Plaintiffs, which are the only cease-and-desist letters LLSD or Sanders sent, establish that a reasonable factfinder could conclude that Sanders retaliated against Plaintiffs in violation of their First Amendment rights when she instituted a plan to have the Facebook page that Plaintiffs administer removed via legal harassment through threats of a trademark suit, because there was a post on the Page about threats to a student by the Valencia High School principal, who is the brother of Sanders's then two closest cabinet members: Deputy Superintendent Brian Baca and LLSD Chief Financial Officer Claire Cieremans. So there is ample evidence in the record for a reasonable factfinder to conclude that the reasons that Sanders provides in her self-serving Affidavit are pretextual – as implausible, inconsistent, and contradicted by the evidence – which this Court recognized precludes summary judgment. *See, e.g., Jarita Mesa Livestock Grazing Ass'n*, 921 F. Supp. 2d at 1189. To the extent that the Court is not convinced that such evidence exists to survive summary judgment, Plaintiffs move the Court for limited discovery under Rule 56(d).

And Sanders's violation of Plaintiffs' constitutional rights was clearly established when Sanders sent the cease-and-desist letters to Plaintiffs demanding that they remove the Los Lunas School District Parent Discussion Page on Facebook or face a lawsuit for damages and fees and costs, because it was clearly established that a government entity like LLSD cannot retaliate against speech critical of it or with which it disagrees via legal harassment, as Sanders and LLSD did here.

Accordingly, the Court properly should deny and dismiss Defendant Dana Sanders's Motion for Summary Judgment on the Basis of Qualified Immunity ("MSJ").

### RESPONSE TO THE "UNDISPUTED MATERIAL FACTS"

1.      Undisputed.

2.      Undisputed.

3.      Undisputed.

4.      Disputed to the extent that Plaintiffs "own" the Los Lunas School District Parent Discussion Page; otherwise, undisputed.

5.      Undisputed.

6.      Undisputed.

7.      Undisputed.

8.      Disputed. But immaterial.[1]

9.      Undisputed for purposes of this MSJ. But immaterial.

---

[1] To the extent that the Court finds the statements in the self-serving Affidavit material, then the Court should dismiss or defer the MSJ, or provide Plaintiffs limited discovery to rebut the statements. *See* Fed. R. Civ. P. 56(d). Exhibit A is a self-serving Affidavit by Sanders which Plaintiffs have not had the opportunity to contest. Plaintiffs have not had the opportunity to propound discovery or take the deposition of Sanders because of the filing of these qualified immunity motions.

10.     Disputed. But immaterial. *See* note 1, *supra*.

11.     Disputed. But immaterial. *See* note 1, *supra*.

12.     Disputed. Defendant Sanders provides no evidence of the alleged calls or complaints other than her self-serving statements. But immaterial. *See* note 1, *supra*.

13.     Disputed. Defendant Sanders provides no evidence of the "old" calendar being posted, the new calendar that was adjusted, or the alleged calls and complaints other than her self-serving affidavit. But immaterial. *See* note 1, *supra*.

14.     Disputed. Defendant Sanders provides no evidence of the alleged posts. But immaterial. *See* note 1, *supra*.

15.     Undisputed that there were posts "stating criticisms or concerns regarding" LLSD "employee(s)," and that the Facebook page "invit[es] comments from other Facebook site participants." Disputed that LLSD staff complained; Sanders provides no evidence of the alleged complaints other than her self-serving affidavit. *See* note 1, *supra*. But that there were staff complaints is immaterial to the Court's resolution of this MSJ. That the Facebook page is a forum where community members expressed First-Amendment protected "criticisms or concerns regarding" LLSD "employee(s)," however, is material.

16.     Undisputed for purposes of the MSJ. But immaterial. *See* note 1, *supra*.

17.     Undisputed.

18.     Disputed. The Facebook post, which received 177 comments, did not state that the "principal's son" was "a seventh grader who plays football." *See* Ex. 1.

19.     Undisputed for purposes of this MSJ. But immaterial. *See* note 1, *supra*.

20.     Undisputed for purposes of this MSJ. But immaterial. *See* note 1, *supra*.

21.     Undisputed.

22.     Disputed that one LLSD Board member objected. The evidence that Sanders provided in support of her MSJ contradicts that statement in her self-serving affidavit, as there is no evidence of such a Board Update – the next Board Update was the October 19, 2018 Board Update, *see* MSJ Ex. C (Doc. 24-3), which does not contain any information regarding a trademark. Otherwise, undisputed.

23.     Disputed. There is nothing in that text message that supports that "that" in the text message refers to the "Los Lunas Schools" name, and "Los Lunas Schools" has never appeared in the title of the Facebook page that Plaintiffs' administer: Los Lunas ***School District*** Parent Discussion Page." *See* note 1, *supra*. The evidence submitted in support of the MSJ, on the other hand, supports that Sanders' intent in that text message was to have the Facebook page removed, as she and LLSD demanded in the cease-and-desist letters. *See* MSJ Ex. H at 1.

24.     Disputed that "persons in the community were calling Plaintiffs' Facebook site 'the Haters' Page." *See* note 1, *supra*. Otherwise, undisputed.

25.     Undisputed.

26.     Undisputed.

27.     Undisputed.

28.     Undisputed.

29.     Disputed that one LLSD Board member objected, but immaterial, *see* note 1, *supra*. Otherwise, undisputed.

30.     Undisputed.

31.     Undisputed.

32.     Undisputed.

33.     Undisputed.

34.     Undisputed.

35.     Undisputed that is what the letter states, but that statement on October 25, 2019 contradicts the cease-and-desist letters' plain language. And immaterial.

36.     Undisputed. But immaterial.

## ADDITIONAL UNDISPUTED MATERIAL FACTS

A.      The Facebook page that Plaintiffs administer, for other than a one-month period in August-September 2019 (after receiving the cease-and-desist letters) is titled "Los Lunas School District Parent Discussion Page," and has never included the mark "LOS LUNAS SCHOOLS," or the "AKA"s in the mark's owner "Los Lunas Public Schools, LLS." Complaint ¶¶ 1, 42, 48, 51; *see* Sanders Undisputed Material Facts ("UMF") ¶ 33.

B.      Jason Baca, the Valencia Middle School principal discussed in the October 12, 2018 post on the Facebook page Plaintiffs administer, is "the brother of both LLSD Deputy Superintendent, Brian Baca, and LLSD CFO, Claire Cieremans, both of whom worked side-by-side with then-Superintendent Dana Sanders in the LLSD central office." Complaint ¶ 31.

C.      On October 18, 2018, in response to media attention to the post about Principal Jason Baca, LLSD issued an official statement stating that the Los Lunas School Parent Discussion Page was "a social media account created by 'disgruntled parents.'" Complaint ¶ 34.

D.      On October 30, 2018, Sanders sent a letter to the parents of all LLSD students, regarding "Social Media Concerns," purportedly "to better serve and inform parents/guardians regarding social media accounts that are not associated with the Los Lunas Schools." The letter states that "[t]here are several social media accounts namely on FaceBook [sic] and Twitter that are not connected or affiliated with the Los Lunas Schools." The letter discusses only the Los Lunas Schools Parent Discussion Page, however, leveling the charge, among others, that, "[i]n

some instances, such as the Los Lunas Schools Parent Discussion Page on FaceBook [sic], there is often inaccurate information, gossip, half-truths, and information posted. This page has become an outlet to circumvent the process to resolve issues and come to resolution regarding concerns." Complaint ¶ 36.

E.      The opening of August 29, 2019 cease-and-desist letters state that they are written because "[i]t has been brought to our attention that you or others you communicate with made unauthorized use of the Los Lunas Schools trademark for purposes of criticizing and providing false information about the District." MSJ Ex. H.

F.      As of January 21, 2021, LLSD and Sanders have issued cease and desist letters in attempts to enforce their purported trademark of "LOS LUNAS SCHOOLS" to only Plaintiffs Rowena Tachias and Monique Dereta. Complaint ¶ 55.

G.      As of January 21, 2021, LLSD had no public guidance for how any person may license the "Los Lunas Schools" mark or any guidelines that advise any person how to use the "Los Lunas Schools" mark in a way that would not subject to legal harassment like the cease-and-desist letters sent to Plaintiffs. The LLSD Board has in place Policy 6.18 "Policy on Intellectual Property." The "Policy on Intellectual Property," however, which was approved in 1997 and last revised in 2008, does not address use of any trademark. Complaint ¶ 56.

## LAW REGARDING SUMMARY JUDGMENT

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "When evaluating a motion for summary judgment, the court examines the factual record and reasonable inferences therefrom in the light most favorable

to the party opposing summary judgment." *Mirzai v. N.M. Gen. Servs. Dept.*, No. CIV 06-219 JB/LAM, Mem'm Opinion and Order at 6 (D.N.M. Mar. 30, 2007) (Browning, J.) (citing *Sigmon v. CommunityCare HMO, Inc.*, 234 F.3d 1121, 1124-25 (10th Cir. 2000)).

### LAW REGARDING FIRST AMENDMENT RETALIATION

"Official reprisal for protected speech offends the Constitution because it threatens to inhibit exercise of the protected right." *Jarita Mesa Livestock Grazing Assn. v. U.S. Forest Service*, 921 F. Supp. 2d 1137, 1187 (D.N.M. Jan. 24, 2013) (Browning, J.) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)). This Court recognized that "legal harassment" is a form of official retaliation to support a First Amendment retaliation claim. *Id.* (quoting *How v. City of Baxter Springs*, 217 F. App'x 787, 797 (10th Cir. Feb. 22, 2007)). There are three elements that Plaintiffs must establish for their First Amendment retaliation claim:

> (i) the plaintiff was engaged in constitutionally protected activity; (ii) the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (iii) the plaintiff's exercise of the constitutionally protected activity substantially motivated the defendant's adverse action.

*Id.* at 1188 (citing *Perez v. Ellington*, 421 F.3d 1128, 1131-32 (10th Cir. 2005)).

In relation to summary judgment, for the third factor – whether Plaintiffs' constitutionally-protected activity substantially motivated the defendant's adverse action – this Court recognized that the Supreme Court's *McDonnell Douglas Corp. v. Green* burden-shifting analysis for pretextual retaliation applies. *Jarita Mesa Livestock Grazing Assn.*, 921 F. Supp. 2d at 1188-89 (citing *Wilkie v. Robbins*, 551 U.S. 537, 556 (2007); *Waters v. Churchill*, 511 U.S. 661, 691 (1994) (Scalia, J., concurring)). Thus, once the defendant comes forward with a legitimate non-retaliatory reason for the adverse action taken, "[t]he plaintiff then must present evidence that the defendant's proffered reason for" the retaliation "was pretextual." *Id.* at 1189.

That evidence of pretext may be demonstrated by various means of circumstantial evidence that allows a reasonable factfinder to rationally find the defendant's purported non-retaliatory reasons "unworthy of credence":

> [T]he plaintiff [may] establish pretext through "evidence of such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in a defendant's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the defendant did not act for the asserted [non-retaliatory] reasons."

*Id.* (quoting *Fye v. Okla. Corp. Comm'n,* 516 F.3d 1217, 1228 (10th Cir.2008)).

With regard to the circumstantial evidence of pretext, this Court recognized: "In determining whether an action was substantially motivated by retaliatory animus, one element which courts have considered is the temporal proximity between a plaintiff's speech and a defendant's allegedly retaliatory action." *Id.* This Court more recently pointed out that proving substantial motivation via temporal proximity is indeed a "common method" of making the required showing. *Chavez-Rodriguez v. City of Santa Fe*, No. CIV 07-0633 JB/DJS, Mem'm Opinion & Order at 30 (D.N.M. Oct. 10, 2017) (Browning, J.). Temporal proximity is often key in First Amendment retaliation claims, because "in a § 1983 proceeding circumstantial evidence generally plays a major role." *Jarita Mesa Livestock Grazing Assn.*, 921 F. Supp. 2d at 1190 (quoting *Evans v. Fogarty*, 241 F. App'x 542, 555 n.14 (10th Cir. 2007)). "'Precisely because the ultimate fact of retaliation turns on defendants' state of mind, it is particularly difficult to establish by direct evidence.'" *Id.* at 1196 (quoting *Smith v. Maschner*, 899 F.2d 940, 949 (10th Cir. 1990)).

Finally, while the third element requires that a plaintiff's constitutionally protected activity must be a substantial motivation for the adverse governmental action, the defendant need not prove that motivation was improper. *See Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2228

(2015) ("We have thus made clear that 'illicit legislative intent is not the *sine qua non* of a violation of the First Amendment,' and a party opposing the government 'need adduce no evidence of an improper censorial motive.'" (quoting *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 117 (1991)). ""In other words, an innocuous justification cannot transform" a constitutional violation for legal harassment based on a plaintiff's constitutional protected activity into constitutionally permissive conduct. *Id.*

## LAW REGARDING QUALIFIED IMMUNITY

"When a defendant asserts qualified immunity, the plaintiff must demonstrate: (i) that the defendant's actions violated his or her constitutional or statutory rights; and (ii) that the right was clearly established at the time of the alleged misconduct." *Manzanares v. Roosevelt Cnty. Adult Det. Ctr.*, 331 F.Supp.3d 1260, 1288 (D.N.M. 2018) (Browning, J.)  (citing *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009)). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam).

In relation to the clearly-established prong, the Tenth Circuit held that "a case directly on point is not necessary," because "general statements of the law" are sufficient "as long as the unlawfulness of an action is apparent." *Ashaheed v. Currington*, No. 20-1237, slip op. at 13 (10th Cir. Aug. 10, 2021).[2] Particularly relevant here, the Tenth Circuit pointed out: "[W]e have accepted general statements of law as clearly established when the unlawfulness of an action depends on the actors' unconstitutional motive." *Id.* at 15 n.8. On the other hand, "when

---

[2] This Court, likewise, recognized: "Factually identical or highly similar factual cases are not, however, the way the real world works. Cases differ. Many cases have so many facts that are unlikely to ever occur again in a significantly similar way." *Manzanares*, 331 F. Supp. 3d at 1294 n.10 (citing *York v. City of Las Cruces*, 523 F.3d 1205, 1212 (10th Cir. 2008)).

determining whether there is a constitutional violation is a fact-intensive inquiry that requires resolving relevant ambiguities," then the law may not be clearly established. *Id.* at 14 n.6. The Tenth Circuit pointed out that such fact-intensive inquiries that result in a constitutional violation are "especially important in the Fourth Amendment excessive force context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine will apply to the factual situation the officer confronts." *Id.*

## RELEVANT LAW REGARDING TRADEMARKS

Every use of a mark that is trademarked does not infringe on the owner's trademark protections. Use of a protected mark may violate the owner's trademark protections ***only if*** the use of the mark is "used in commerce," *Radiance Foundation, Inc. v. N.A.A.C.P.*, 786 F.3d 316, 322 (4th Cir. 2015) (citing 15 U.S.C. §§ 1114(1)(a) & 1125(a)(1)). "To invoke the protections of the Lanham Act, a plaintiff must show that the alleged infringer used the plaintiff's mark 'in connection with any goods or services.' This is commonly described as the commercial use requirement." *Utah Lighthouse Ministry v. Found. For Apologetic Info. & Research*, 527 F.3d 1045, 1051-52 (10th Cir. 2008). Thus, as the Eighth Circuit recognized: The Tenth Circuit "interpreted this element as protecting from liability in all noncommercial uses of marks." *Radiance Foundation, Inc.*, 786 F.3d at 322 (citing *Utah Lighthouse Ministry*, 527 F.3d at 1052-54).

Particularly relevant to the Court's inquiry here whether the Defendants' legal harassment via obtaining the trademark and sending the cease-and-desist letter for the specific purpose of demanding that Plaintiffs "remov[e] the unauthorized social media account on Facebook," Complaint ¶ 47, clearly was First Amendment retaliation, "trademark infringement protects only against mistaken purchasing decisions and not against confusion generally."

*Radiance Foundation, Inc.*, 786 F.3d at 324 (quoting *Lang v. Ret. Living Publ'g Co.*, 949 F.2d 576, 583 (2d Cir. 1991)).

ARGUMENT

I.  **SANDERS VIOLATED PLAINTIFFS' CONSTITUTIONAL RIGHTS BY TRADEMARKING "LOS LUNAS SCHOOLS" FOR THE SOLE PURPOSE TO RETALIATE AGAINST PLAINTIFFS FOR THE SPEECH ON THE FACEBOOK PAGE AND THEN SENDING CEASE-AND-DESIST LETTERS THAT LEGALLY HARASSED PLAINTIFFS AS RETALIATION FOR THE SPEECH.**

In relation to Plaintiffs' First Amendment retaliation claim, the undisputed facts easily meet the first two requirements of Plaintiffs' First-Amendment retaliation claim (and Sanders doesn't appear to dispute that). Plaintiffs' administration of the Facebook page – including their posts and others' posts and comments on that page – constitutes "engage[ment] in constitutionally protected activity." *Jarita Mesa Livestock Grazing Assn.*, 921 F. Supp. 2d at 1188. *See, e.g., Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017) (""[T]o foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights."); *Smith v. Plati*, 258 F.3d at 1177 ("[P]ublishing Netbuffs.com is undoubtedly activity protected by the First Amendment."); *Bland v. Roberts*, 730 F.3d 368, 380-81 (4th Cir. 2013) (holding that comments on Facebook pages and "likes" on those pages constitutes speech protected by the First Amendment for basis of First Amendment retaliation claim).

Second, the cease-and-desist letters demanding that Plaintiffs take down the Facebook page that they administer or "force the District to take further legal action including filing of a civil lawsuit seeking monetary damages, court and attorneys' fees," Complaint ¶ 74 (quoting Doc. 1-3, at 1), is an action that "caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity," *Jarita Mesa Livestock Grazing*

*Assn.*, 921 F. Supp. 2d at 1188. *See id.* at 1187 (recognizing that "threatened prosecution" and "legal harassment" constitute First Amendment retaliation).

The heart of Sanders's defense to her constitutional violation is that she contends that she had some non-retaliatory motivation to threaten the Plaintiffs with legal harassment. But even explaining her motive shows that her violation ***was indeed motivated by*** Plaintiffs' First Amendment speech – as she admits that she was motivated not by Plaintiffs' use of "Los Lunas Schools," but rather she was motivated by the content of the speech on the Facebook page Plaintiffs administer:  "Defendant Sanders was motivated as a public official to obtain a trademark for the School District based upon her legitimate discretion as a public school superintendent ***who was*** reasonably ***concerned about the mis-information and rumormongering on Plaintiffs' Facebook site*** being attributed to the School District and which was hampering the School District's education-related communication efforts with the community it serves." MSJ at 21 (emphasis added). That motivation is made crystal clear by the opening line in the cease-and-desist letters, where LLSD and Sanders write that the reason for sending the letters is that "[i]t has been brought to our attention that you or others you communicate with made unauthorized use for the Los Lunas Schools trademark ***for purposes of criticizing*** and providing false information about the District." Plaintiffs' Undisputed Material Fact ("Plaintiffs' UMF") ¶ E (emphasis added) (quoting MSJ Ex. H, at 1).

Notice what's not in the statement on page 21 of Sanders's MSJ about her motivation. She does not contend that she was motivated by protecting LLSD's good will against the sale of any product by Plaintiffs as LLSD's product, which is what's required for trademark infringement. *See Utah Lighthouse Ministry*, 527 F.3d at 1054 ("A trademark only gives the right to prohibit the use of it so far as to protect the owner's good will against the sale of another's

product as his.'" (quoting *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924)). Sanders doesn't

even contend that she was motivated by making sure that LLSD's mark, "Los Lunas Schools"

was not used on Facebook by other than LLSD (even though that still is insufficient for

trademark infringement, since trademark protects use of a mark "in commerce" only). *Id.* Rather,

Sanders's explanation makes plain that she was motivated by the content and message expressed

on the Facebook page – criticism of the government entity – which is quintessential First

Amendment retaliation. *See Simon Schuster, Inc v. Members of the N.Y. State Crime Victims Bd.*,

502 U.S. 105, 116 (1991) ("'Regulations which permit the Government to discriminate on the

basis of the content of the message cannot be tolerated under the First Amendment.'" (quoting

*Regan v. Time, Inc.*, 468 U.S. 641, 648-649 (1984)).

Outright admitting that she was "motivated" by the criticisms and "rumormongering on

Plaintiffs' Facebook site," MSJ at 21, discloses, obviously, her retaliatory motive in engaging in

her unconstitutional plan to legally harass Plaintiffs via the trademark for the "ideas [on the

page] that offend[ed]" Sanders and LLSD, *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017) (J. Alito

Opinion). This establishes that "the plaintiff[s'] exercise of the constitutionally protected activity

substantially motivated the defendant's adverse action." *Jarita Mesa Livestock Grazing Assn.*,

921 F. Supp. 2d at 1188. *See Matal*, 137 S. Ct. at 1751 ("Speech may not be banned on the

ground that it expresses ideas that offend.").

Notably, to establish a claim of First Amendment retaliation, the Plaintiffs don't need to

prove that as the third element that Sanders's legal harassment was motivated by an evil intent.

Likewise, to establish a claim of First Amendment retaliation, Plaintiffs don't need to prove that

their constitutionally protected activity was the ***sole*** motivation for Sanders's legal harassment.

Rather, Plaintiffs need only prove that their "constitutionally protected activity substantially

motivated the defendant's adverse action." *Jarita Mesa Livestock Grazing Assn.*, 921 F. Supp. 2d at 1188. So the Court's First-Amendment inquiry doesn't take into consideration Sanders's contention that her intention was that she thought threatening legal harassment to force Plaintiffs to remove the alleged "mis-information and rumormongering" would purportedly make easier "the School District's education-related communication efforts with the community it serves," MSJ at 21, other than that the Court must recognize that Sanders admits that Plaintiffs' constitutionally protected activity was the motivation – likely the sole motivation but certainly a substantial motivation – for Sanders's and LLSD's legal harassment via the cease-and-desist letters. As the Supreme Court recently reaffirmed: evidence of an improper censorial motive is not required to prove a First Amendment violation. *See Reed*, 135 S. Ct. at 2228 ("We have thus made clear that 'illicit legislative intent is not the *sine qua non* of a violation of the First Amendment,' and a party opposing the government 'need adduce no evidence of an improper censorial motive.'" (quoting *Simon & Schuster, Inc.*, 502 U.S. at 117). *See Minneapolis Star & Tribune Co. v. Minnesota Comm'r of Revenue*, 460 U.S. 575, 592 (1983) ("We have long recognized that even regulations aimed at proper governmental concerns can restrict unduly the exercise of rights protected by the First Amendment.").

Plaintiffs don't dispute that "[a] reasonable public school official such as a superintendent of the schools . . . would be understandably concerned about these events and how they negatively impacted the school district's functions and responsibilities to" LLSD stakeholders. MSJ at 21. Plaintiffs don't dispute that "[Sanders] would also be concerned about the difficulty imposed on Los Lunas Schools' officials in remedying all the ill effects and mis-information arising from Plaintiffs' Facebook site that was erroneously relied upon by some members of the public based on the use of 'Los Lunas Schools'" – to the extent that any of those assertions may

be true.[3] *Id.* But in light of clearly established First Amendment precedent, those "concern[s]" certainly and ***clearly*** do not lead to the conclusion, consistent with the First Amendment, that "Sanders reasonably exercised her discretion as a public official to apply for and obtain the lawful trademark 'Los Lunas Schools' for the School District, and then send cease and desist letters to Plaintiffs to remove 'Los Lunas Schools' from the title of their Facebook site." *Id.*

If there is any question whether Sanders was "substantially motivated" by the clearly constitutionally protected activity on the Los Lunas School District Parent Discussion Page that Plaintiffs administer, the undisputed material facts meet the required "temporal proximity" that this Court recognized is a "common method" of making the required showing to survive summary judgment. *Chavez-Rodriguez*, *supra*, Mem'm Opinion & Order at 30.

The Los Lunas School District Parent Discussion page existed as a forum on Facebook for "user-generated . . . posts consisting of commentary made by its members" – LLSD stakeholders – since February of 2011. UMF ¶¶ 3, 7. From February of 2011 until October 12, 2018, when "a community member posted . . . that the Valencia Middle School principal allegedly threated a student with physical violence from another student (the principal's son) and told the student to keep quiet about it," UMF ¶ 17, neither LLSD nor Sanders ever communicated to the public at large, the Plaintiffs, the media, or allegedly to anyone other than a few purported parents and community members who were confused about snow days and the LLSD calendar. *See* UMF ¶¶ 3-23.

"Following the incident at Valencia Middle School" when there was a post on the page Plaintiffs administer about a LLSD principal threatening a middle school student – which

---

[3] The Facebook page that Plaintiffs administer – "Los Lunas ***School District*** Parent Discussion Page" – has never used the LLSD mark "Los Lunas ***Schools***" (emphasis added) or any "AKA" that is designated as the owner of that mark. *See* Plaintiffs' Undisputed Material Fact ¶ A.

principal was the brother of Sanders's cabinet members who worked side-by-side with Sanders, the Deputy Superintendent and CFO – Sanders "as Superintendent of Schools began to actively work towards obtaining a trademark for Los Lunas Schools." UMF ¶ 22. *See* Plaintiffs' UMF ¶ B. The first business day following that, Sanders sent a text to the LLSD Board expressing as the only purpose of trademarking "Los Lunas Schools" was to have "[that] removed from Plaintiffs' Facebook page." MSJ Ex. B at 1. *See* UMF ¶ 23. Sanders then submitted the trademark application for LLSD a week later, on October 22, 2018. UMF ¶ 25.

We don't know when Sanders or LLSD received notice that, on July 9, 2019, the USPTO registered "Los Lunas Schools." But less than a month after that registration, on August 2, 2019, Sanders updated the LLSD Board on receipt of the trademark and that she had already "requested Los Lunas Schools' attorney . . . to write 'cease and desist' letters to Plaintiffs." UMF ¶¶ 27-28.

On August 23, 2019, three weeks later, when Sanders received the proposed cease-and-desist letters from the attorney, she sent them to LLSD Board members along with her intention to send them "shortly, . . . inviting Board input on any objections." UMF ¶ 29. On August 29, 2019, Sanders sent Plaintiffs the cease-and-desist letters, which objected to "criticizing . . . the District," and which demanded assurance that Plaintiffs "remov[e] . . . the unauthorized social media account on Facebook." UMF ¶¶ 30-32; MSJ Ex. H at 1.

Since LLSD received the "Los Lunas Schools" trademark on July 9, 2019, to at least January 21, 2021, LLSD has not put in place any "public guidance for how any person may license the 'Los Lunas Schools" mark or any guidelines that advise any person how to use the 'Los Lunas Schools' mark in a way that would not subject to legal harassment like the cease-and-desist letters sent to Plaintiffs." Plaintiffs' UMF ¶ F. Since LLSD received the "Los Lunas

Schools" trademark on July 9, 2019, to at least January 21, 2021, LLSD and Sanders "have

issued cease and desist letters in attempts to enforce their purported trademark of 'LOS LUNAS

SCHOOLS' to only Plaintiffs." Plaintiffs' UMF ¶ E.

That chain of unbroken events in what Sanders admits was the plan "to actively work

towards obtaining a trademark" to have "that removed from [Plaintiffs'] Facebook page" is

exactly the "temporal proximity" that this Court recognized is a "common method" to establish

pretext to overcome a motion for summary judgment. *Chavez-Rodriguez*, *supra*, Mem'm

Opinion & Order at 30; *see Jarita Mesa Livestock Grazing Ass'n*, 921 F. Supp. 2d at 1189.

This Court has also pointed that "the plaintiff [may] establish pretext" to overcome

summary judgment on a First Amendment retaliation claim "through 'evidence of such

weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in a defendant's

proffered legitimate reasons for its action that a reasonable factfinder could rationally find them

unworthy of credence and hence infer that the defendant did not act for the asserted non[-

retaliatory] reasons.'" *Id.* And LLSD's trademark, and legal harassment based on that trademark,

is certainly pretext.

Trademark law does not – as Sanders obviously suggests in her MSJ – allow the mark's

owner to remove the mark from the English lexicon. LLSD cannot, as it seems to think it can,

sue anyone and everyone who ever uses "Los Lunas Schools" for trademark infringement.

Rather, "[t]o invoke the protections of the Lanham Act, a plaintiff must show that the alleged

infringer used the plaintiff's mark 'in connection with any goods or services.' This is commonly

described as the commercial use requirement." *Utah Lighthouse Ministry*, 527 F.3d at 1051-52.

In other words, "'[a] trademark only gives the right to prohibit the use of it so far as to protect

the owner's good will against ***the sale of another's product as his***.'" *Id.* at 1054 (emphasis

added). *Cf.* MSJ at 18-19 (discussing *Estate of Norman v. Lavern*, Case No. CIV-14-01435-M (W.D. Okla. May 20, 2015) (MSJ Ex. L), in which the court enjoined "the defendant from using Moe Norman's trademark for golf-related ***services***, after the defendant "had published a book," and recognizing the requirement that "defendant used the trademark in connection with any goods and services," and the use "is likely to cause confusion . . . as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities.").

There are no facts – let alone undisputed material facts put forth by Sanders – that Plaintiffs ever used the "Los Lunas Schools" mark "in commerce" or to sell any services or products, let alone as services or products of LLSD.[4] That LLSD and Sanders went to all of trouble over the course of years to trademark "Los Lunas Schools" and then sought to enforce that trademark against Plaintiffs only, without even contending at any point that Plaintiffs used the mark in commerce, is evidence of "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in" Sanders's "proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the defendant did not act for the asserted non[-retaliatory] reasons.'" *Jarita Mesa Livestock Grazing Ass'n*, 921 F. Supp. 2d at 1189.

At bottom, Sanders admits that the substantial, if not sole, motivation in trademarking "Los Lunas Schools" and legally harassing Plaintiffs with the cease-and-desist letters was to chill what Sanders was "concern[ed]" is "mis-information and rumormongering on Plaintiffs' Facebook site." That is First Amendment retaliation. To the extent that the Court need look further into circumstantial evidence, the temporal proximity of the events to the October 12, 2018 post about a middle school principal and the plan to trademark the name to get Plaintiffs to

---

[4] Plaintiffs never used "Los Lunas Schools." *See* note 3, *supra*.

take down the page – or even to remove Los Lunas – from the page is sufficient evidence of motivation to overcome summary judgment. And finally, the circumstantial evidence about inconsistencies, weaknesses,  incoherence, and contradictions in LLSD's and Sanders's attempt to enforce the trademark for use that they don't even contend was "in commerce" is sufficient to overcome summary judgment. Thus, the Court should find that Sanders violated Plaintiffs' First Amendment Rights by legally harassing them via the cease-and-desist letters.

**II.     SANDERS'S UNCONSTITUTIONAL RETALIATION AGAINST PLAINTIFFS FOR EXERCISE OF THEIR AND OTHERS' FIRST AMENDMENT RIGHTS ON A FACEBOOK PAGE THAT PLAINTIFFS ADMINISTERED WAS CLEARLY ESTABLISHED WHEN THE VIOLATION OCCURRED.**

To be clear, the "violation" of Plaintiffs' First Amendment rights took place on August 29, 2019, when LLSD and Sanders sent cease-and-desist letters to Plaintiffs demanding that they "remove the unauthorized social media account on Facebook" or, if not, then they "force the District to take further legal action including filing of a civil lawsuit seeking monetary damages, court and attorneys' fees." Complaint ¶ 47. It was clearly established on August 29, 2019, that Sanders, as a government official of a government agency – a school district – cannot retaliate against those who criticize the government agency LLSD.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam). "[T]he clearly established right for a qualified immunity analysis must be defined with specificity. But . . . a case directly on point is not necessary if existing precedent has placed the . . . constitutional question beyond debate." *Ashaheed v. Currington*, No. 20-1237, slip op. at 13 (10th Cir. Aug. 10, 2021) (quoting *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019) (per curiam); *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (per curiam)). "[G]eneral statements of the law" are sufficient to give "fair and clear

warning to officers, as long as the unlawfulness of an action is apparent." *Id.* "The Supreme Court also has said that courts may find a violation of a clearly established law when a defendant's conduct is so obviously unlawful that factually similar or identical precedent is unneeded." *Id.* at 15 (citing *Taylor v. Riojas*, 141 S. Ct. 52, 53 (2020) (per curiam)). *See id.* at 16 n.9 ("'[E]ven assuming that our previous cases were not sufficiently particularized to satisfy the ordinary clearly established law standard, ours is the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." (quoting *McCoy v. Meyers*, 887 F.3d 1034, 1041, 1052-53 (10th Cir. 2018)).

Under the circumstances here, general statements of law clearly establish that every reasonable government official would have known on August 29, 2019 that sending a cease-and-desist letter to have statements "criticizing . . . the District" that the officer disagreed with "removed from [Plaintiffs'] FaceBook page" violates Plaintiffs' First Amendment rights. MSJ Ex. B, Ex. H; *see* UMF ¶ 23. The following general statements of law clearly establish that Sanders's conduct violated Plaintiffs' First Amendment rights:

- "The First Amendment only protects speech from regulation by the government." *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 968 (10th Cir. 1996).

- "[S]peech on matters of public concern fall within the core of First Amendment protection." *Engquist v. Ore. Dep't of Agric.*, 553 U.S. 591, 600 (2008).

- "Speech may not be banned on the ground that it expresses ideas that offend." *Matal v. Tam*, 137 S. Ct. 1744, 1751 (2017) (J. Alito Opinion). "[T]he proudest boast of our free speech jurisprudence is that we protect the freedom to express 'the thought that we

hate.'" *Id.* at 1764 (quoting *United States v. Schwimmer*, 279 U.S. 644, 655 (1929) (Holmes, J., dissenting)).

- "[T]he last thing the First Amendment will tolerate, is a law that lets public figures keep people from mocking them." *Cardtoons, L.C.*, 95 F.3d at 973 (quoting *White v. Samsung Elecs. Am., Inc.*, 989 F.2d 1512, 1519 (9th Cir. 1993) (Kozinski, J., dissenting)).

- "We have thus made clear that 'illicit legislative intent is not the *sine qua non* of a violation of the First Amendment,' and a party opposing the government 'need adduce no evidence of an improper censorial motive.'" *Reed*, 135 S. Ct. at 2228 (quoting *Simon & Schuster, Inc.*, 502 U.S. at 117). "We have long recognized that even regulations aimed at proper governmental concerns can restrict unduly the exercise of rights protected by the First Amendment." *Minneapolis Star & Tribune Co*, 460 U.S. at 592).

- "[T]o foreclose access to social media altogether is to prevent the user from engaging in the legitimate exercise of First Amendment rights." *Packingham v. North Carolina*, 137 S. Ct. 1730, 1737 (2017).

- "'A trademark only gives the right to prohibit the use of it so far as to protect the owner's good will against ***the sale of another's product as his***.'" *Utah Lighthouse Ministry*, 527 F.3d at 1054 (emphasis added) (quoting *Prestonettes, Inc. v. Coty*, 264 U.S. 359, 368 (1924)). "To invoke the protections of the Lanham Act" governing trademarks, the party asserting to enforce the trademark "must show that the alleged infringer used the plaintiff's mark 'in connection with any goods or services. This is commonly described as the commercial use requirement." *Id.* at 1052.

- "[A]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and ***legal harassment***,

constitutes an infringement on that freedom." *Worrell v. Henry*, 219 F.3d 1197, 1212 (10th Cir. 2000) (emphasis added).

All of the law cited above was clearly established before August 29, 2019, and before October 15, 2018, when Sanders "began to actively work towards obtaining a trademark for Los Lunas Schools" to have "that removed from [Plaintiffs'] Facebook page." MSJ Ex. B; *see* UMF ¶ 24. As the Tenth Circuit concluded in *Ashaheed*, "[t]he foregoing free [speech] law precepts were not too general to provide fair warning to a reasonable [public school Superintendent] in [Sanders's] position. [She] did not have to resolve 'relevant ambiguities." *Ashaheed*, *supra*, slip op. at 17. LLSD's and Sanders's threat of legal harassment on the "ground that [the speech] expresses ideas that offend," is plainly an unconstitutional motive. *Matal*, 137 S. Ct. at 1751. *See Ashaheed*, *supra*, slip op. at 17 ("Anti-muslim animus is plainly an unconstitutional motive.").

Indeed, Sanders admits that she "was motivated as a public official" to legally harass Plaintiffs via the threat of litigation based on the trademark because she was "concerned about ***the mis-information and rumormongering on Plaintiffs' Facebook site***." MSJ at 21 (emphasis added). This is precisely what the Supreme Court clearly established at the latest in 2017 is plainly unconstitutional: "Speech may not be banned on the ground that it expresses ideas that offend." *Matal*, 137 S. Ct. at 1751.

As the Tenth Circuit points out in *Ashaheed*, under the clearly-established prong of qualified immunity, "[t]he dispositive question in all cases is whether 'the violative nature' of the particular conduct at issue is clearly established." *Ashaheed*, *supra*, slip op. at 13 (quoting *A.N. ex rel. Ponder v. Syling*, 928 F.3d 1191, 1197 (10th Cir. 2019)). It is not the means of the violation.

So to establish that the nature of Sanders's constitutional violation was clearly established, Plaintiffs don't need to point the Court to a Tenth Circuit or Supreme Court precedent that holds that it is unconstitutional for a governmental entity retaliating against speech with which it disagrees or critical of the entity ***using the means of*** an attempt to enforce a trademark. And Plaintiffs certainly don't need to point the Court to a Tenth Circuit or Supreme Court precedent that answers the question:

> Whether a public official violates clearly established law on the First Amendment when he or she requests disuse of the school district's trademarked name by community members who administer a social media forum on public educational issues who are using the name of the local school district to label their site, and such use is causing confusion and mis-information that undermine the school district's educational mission and day-to-day operations.

MSJ at 15.

Rather, Plaintiffs need only point the Court to precedent that establishes that the nature of the violation here is clearly established. *Ashaheed*, *supra*, slip op. at 13. And Sanders's ***admitted*** "actions and intent," like the actions of the defendant in *Ashaheed*, "also present 'the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear.'" *Id.* at 17-18 (quoting *McCoy*, 887 F.3d at 1053).

The violative nature of Sanders's conduct is that she "began to actively work towards obtaining a trademark for Los Lunas Schools," UMF ¶ 22, to retaliate against Plaintiffs for speech critical of LLSD, the ideas of which she found offensive, and then threatened legal harassment in the cease-and-desist letters. There's a wealth of precedent from the Supreme Court and Tenth Circuit that government officials cannot engage in legal harassment in retaliation for protected First Amendment speech. *See, e.g., Worrell v. Henry*, 219 F.3d at 1212; *How v. City of Baxter Springs*, 217 F. App'x 787, 797 (10th Cir. 2007). And as in *Ashaheed*, Sanders attempted to shut down an online forum for speech that is critical of a school district principal threatening a

student, which principal was the brother of two LLSD cabinet members – the Deputy

Superintendent and the CFO – "present[s] 'the rare obvious case, where the unlawfulness of the

officer's conduct is sufficiently clear.'" *Ashaheed*, *supra*, slip op. at 17-18.

The violative nature of censoring speech on a social media Facebook page also was

clearly established at the time. *See Packingham*, 137 S. Ct. at 1737; *cf. Bland v. Roberts*, 730

F.3d at 380-81. And although Plaintiffs need not establish that the means of the violation were

clearly established, *Ashaheed*, *supra*, slip op. at 13; *A.N.*, 928 F.3d at 1197, the means too were

clearly established at the time. It was clearly established that trademarks are subject to the First

Amendment. *See, e.g., Matal*, 137 S. Ct. at 1744; *Cardtoons, L.C.*, 95 F.3d at 968-70. And it was

clearly established that trademarks may be enforced only "so far as to protect the owner's good

will against the sale of another's product as his.'" *Utah Lighthouse Ministry*, 527 F.3d at 1054.

There are no allegations or contentions – let alone undisputed material facts – that Plaintiffs

offered anything for sale.

Finally, it was also clearly established that the nature of Sanders's violation of Plaintiffs'

constitutional rights does not depend on her illicit intent. *See Reed*, 135 S. Ct. at 2228 ("'[I]llicit

legislative intent is not the *sine qua non* of a violation of the First Amendment,' and a party

opposing the government 'need adduce no evidence of an improper censorial motive.'");

*Minneapolis Star & Tribune Co.*, 460 U.S. at 592 ("We have long recognized that even

regulations aimed at proper governmental concerns can restrict unduly the exercise of rights

protected by the First Amendment."). So even if, as Sanders contends in her self-serving

affidavit, she was "concerned about the difficulty imposed on Los Lunas Schools' officials in

remedying the ill effects and mis-information arising from Plaintiffs' Facebook  cite that was

erroneously relied upon by some members of the public based on the use of 'Los Lunas Schools'

in its name," it was clearly established on August 29, 2019 that retaliating against such speech for that reason is still a violation of Plaintiffs' First Amendment rights.

And this purported motivation of Sanders shows glaringly that this case "present[s]" what was discussed in *Ashaheed* as "'the rare obvious case, where the unlawfulness of the officer's conduct is sufficiently clear.'" *Ashaheed*, *supra*, slip op. at 17-18. Sanders contends that she just, innocently, wanted Plaintiffs to remove "Los Lunas Schools" from what she contends was "misinformation and rumormongering" on Plaintiffs' page. Imagine if any other public official or government entity could, as LLSD seeks to do, trademark his, her or its name and take that out of the English lexicon from any use which the public official or entity found offensive. Certainly, for example, President Joe Biden could not trademark "Joe Biden" and its AKAs and then threaten to sue any news media or Republican official anytime "Joe Biden" was used in a way with which President Biden disagreed. Likewise, for another more local and recent example, New Mexico Children Youth and Families Department ("CYFD") could trademark its name, as LLSD did here. But certainly, CYFD could not then send cease-and-desist letters to the news media or the various administrators of Facebook pages (or blog-posters) that post information about CYFD, using "CYFD" in a post or blog the ideas and criticisms expressed with which CYFD disagreed. *Cf., e.g.,* Joe Monahan, *New House Leader Martinez To Keep it On "Progressive Path, Plus: Radio Talker Aragon Makes Cut; Collects Enough Sigs To Make Mayoral Ballot, And: **CYA At CYFD As Secretary Heads To The Exits***, New Mexico Politics with Joe Monahan (Aug. 11, 2021), http://joemonahansnewmexico.blogspot.com/.

Thus, Sanders's violation of Plaintiffs' constitutional rights by legal harassment in threatening that LLSD would sue Plaintiffs if they didn't remove the Los Lunas School District Parents Discussion Page – or even remove "Los Lunas Schools" – was clearly established at the

time of the violation. Accordingly, the Court should deny and dismiss Sanders's Motion for

Summary Judgment based on Qualified Immunity.

**III.    BECAUSE SANDERS FILED HER MSJ BEFORE THE START OF
          DISCOVERY, THE COURT SHOULD NOT GRANT SUMMARY JUDGMENT
          WHERE MORE DISCOVERY IS NEEDED.**

      Sanders filed her MSJ before the true start of discovery. As shown above, the undisputed

material facts establish that the Court may not properly grant summary judgment.

      But if the Court believes that that there are material facts set forth in Sanders's

Undisputed Material Facts section, then the proper remedy is not to grant summary judgment,

but to afford Plaintiffs the ability to cross examine her and the other LLSD Board members from

October 2018 to January 2021 to rebut Sanders's statements in her self-serving affidavit.

Further, Plaintiffs would like to obtain: (1) any LLSD records that reflect or concern "call[s to

the] central office to complain or seek clarification" of information obtained on the Facebook

Page Plaintiffs administer, UMF ¶¶ 12-13; and (2) communications between Sanders, the then-

Board members, Deputy Superintendent Brian Baca, and CFO Clair Cieremans. These

communications are relevant to Sanders's statements about her asserted pretextual motivations in

seeking the trademark to legally harass Plaintiffs. See *Jarita Mesa Livestock Grazing Ass'n*, 921

F. Supp.2d at 1188-89.  *See* Ex. 2 FRCP 56(D) Affidavit of Counsel.

      Thus, to the extent the Court believes that any of Sanders's facts which are based on her

self-serving affidavit, which Plaintiffs dispute, are material to the Court's denial of her MSJ,

Plaintiffs request, under Rule 56(d), that the Court permit Plaintiffs discovery in this matter to

adequately respond to Sanders's motion and purported undisputed material facts.  *See, e.g., Been
v. O.K. Industries, Inc.,* 495 F.3d 1217, 1235 (10th Cir. 2007) (summary judgment ordinarily

refused when party has not had opportunity to discover essential information).  Therefore,

pursuant to Fed. R. Civ. Proc. 56(d), if the Court finds this to be a factual rather than legal

dispute, the court should "(1) defer considering the motion or deny it; (2) allow time to obtain

depositions or to take discovery; or (3) issue any other appropriate order."

## CONCLUSION

For the foregoing reasons, the undisputed material facts establish that a reasonable

factfinder could find Defendant Dana Sanders liable under 42 U.S.C. § 1983 for retaliating

against Plaintiffs for exercise of their First Amendment speech. Moreover, the constitutional

violation by Sanders was clearly established at the time of the violations. The Court, therefore,

should deny and dismiss her Motion for Summary Judgment on the basis of Qualified Immunity.

To the extent that the Court believes that disputed facts based upon Sanders's self-serving

affidavit are necessary to reach that denial and dismissal, Plaintiffs seek an order from the Court

deferring or denying the MSJ, or allowing that discovery.

Respectfully submitted,

PEIFER, HANSON, MULLINS & BAKER, P.A

By: */s/ Matthew M. Beck*
    Matthew M. Beck
20 First Plaza, Suite 725
Albuquerque, NM 87102
Tel: (505) 247-4800
Email: mbeck@peiferlaw.com

AMERICAN CIVIL LIBERTIES UNION
OF NEW MEXICO FOUNDATION

By: */s/ Leon Howard III*
    Leon Howard III
P.O. Box 566
Albuquerque, NM 87103-0566
Tel:   (505) 266-5915
Email: lhoward@aclu-nm.org
*Attorneys for Plaintiffs Rowena Tachias and
Monique Dereta*

## CERTIFICATE OF SERVICE

I certify that on August 30, 2021, I served the foregoing electronically using the CM/ECF system, which caused counsel of record to be served electronically, as reflected on the Notice of Electronic Filing.

PEIFER, HANSON, MULLINS & BAKER, P.A.


*/s/     Matthew M. Beck*
Matthew M. Beck