## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

ROWENA TACHIAS and MONIQUE
DERETA,

      Plaintiffs,

v.                                                                          Civ. No. 1:21-cv-00085 MIS/JFR

LOS LUNAS SCHOOLS BOARD OF
EDUCATION, BRYAN SMITH, in his
individual capacity and in his official capacity
as President for the Los Lunas Schools Board
of Education, ELOY GIRON, in his official
capacity as Vice President of the Los Lunas
Schools Board of Education, STEVEN
OTERO, in his official capacity as Secretary
of the Los Lunas Schools Board of Education,
FRANK OTERO, in his individual and
official capacity as a member of the Los
Lunas Schools Board of Education,
P. DAVID VICKERS, in his official capacity
as a member of the Board of Education, and
DANA SANDERS, in her individual capacity,

      Defendants.

## MEMORANDUM OPINION AND ORDER
## GRANTING DEFENDANTS BRYAN SMITH AND FRANK OTERO'S
## MOTION FOR JUDGMENT ON THE PLEADINGS

THIS MATTER is before the Court on Defendants Bryan Smith and Frank Otero's

(collectively, "Defendants") Motion and Memorandum for Judgment on the Pleadings on

the Basis of Failure to State a Claim, Qualified Immunity, Legislative Immunity, and the

Statute of Limitations ("Motion"). ECF No. 27. Plaintiffs, Rowena Tachias and Monique

Dereta (collectively, "Plaintiffs"), filed their Response, and Defendants filed their Reply.

ECF Nos. 35, 45. Having considered the parties' submissions, the Complaint, and the

relevant law, the Court will grant the Motion, dismiss without prejudice Plaintiffs' individual capacity claims against Defendant Bryan Smith and Defendant Frank Otero, and sua sponte allow Plaintiffs leave to amend their Complaint within 30 days of entry of this Order.

## FACTUAL BACKGROUND

This case centers around a dispute between two parents, Rowena Tachias and Monique Dereta, and the Los Lunas Schools Board of Education ("Board") over a Facebook page titled the "Los Lunas School District Parent Discussion Page." The Defendants at issue in the present Motion, Bryan Smith and Frank Otero, were two members of the Board. Plaintiffs' Complaint asserts the following:[1]

### I.      Creation of the Los Lunas School District Parent Discussion Page

The Board is the duly elected board of education for the school district in Los Lunas, New Mexico, and oversees several schools—including Valencia Middle School and Valencia High School. *See* ECF No. 1 at 4, ¶ 11; 5, ¶ 20; 9, ¶ 31.

In 2010, a Los Lunas community member created a Facebook discussion page for Los Lunas School District ("District") parents and stakeholders to facilitate discussion of the upcoming Board elections. *Id.* at 5, ¶ 18. Prior to 2011, public comment was welcomed at Board meetings. *Id.* at 5, ¶ 19. Any member of the public who attended the Board meetings could speak during the public comment portion on any topic for three minutes or less, and the Board could address that member's comments. *Id.* On December 14, 2010, parents of Valencia High School football players attended the Board meeting and accused the Board and District employees of violating the students' rights by interrogating

---

[1] The well-pleaded factual allegations in Plaintiffs' Complaint are assumed true for purposes of the Motion. *Ashcroft v. Iqbal,* 556 U.S. 662, 678–79 (2009).

them about hazing allegations in the presence of New Mexico State Police and without their parents present. *Id.* at 5–6, ¶ 20. The parents at the meeting directly criticized District officials for the interrogations, and members of the public in attendance nodded their heads and even applauded in response to the parents' comments. *Id.* at 6, ¶ 20. In 2011, the Board began efforts to limit the public comment portion of their meetings to inhibit speech critical of the District and the Board, like the speech that occurred in the December 2010 Board meeting. *Id.* at 6, ¶ 21.

In early 2011, the Los Lunas community member who started the original Facebook page posted that he was going to shut down the page because his wife (a District teacher) had been threatened with termination due to her connection with the page. *Id.* at 6, ¶ 22. In response to that post, on February 9, 2011, Plaintiffs created a new Facebook page titled the "Los Lunas School District Parent Discussion Page" and took on the roles of administrators of the page to continue to facilitate online social networking services for District parents, stakeholders, and the community. *Id.* at 6, ¶ 23. Plaintiff Tachias is the parent of three children who attended school in the District, the youngest having graduated in 2015. *Id.* at 4, ¶ 9. Additionally, one of Plaintiff Tachias' children is currently a school district employee. *Id.* Plaintiff Dereta is also the parent of three children who went to school in the District and currently has four grandchildren enrolled in the District. *Id.* at 4, ¶ 10.

The first post conveyed that the new page was intended to be an online social networking service for discussion of issues of concern for District parents and stakeholders:

> This page is for Los Lunas School District Parents/residents
> to openly discuss issues/ideas that concern the safety/welfare
> and the education of the kids in this district. This is an
> opportunity to share information/questions that will hopefully
> reach the FB pages of our school board members....so if you
> know them, invite them. Thanks and lets [sic] all play nice with
> each other, we can be civil grown ups.

*Id.* In October 2011, the Board instituted a policy to limit public comment at its monthly meetings. *Id.* at 6, ¶ 24. Rather than allow public comment at the Board meetings as it had in the past, the new policy significantly curtailed the public's ability to comment. *Id.* Under the new policy, for the public to comment at a Board meeting, the topic about which the public member wants to comment must have been on the agenda. *Id.* at 6–7, ¶ 24. If it were on the agenda, the public member would be permitted to talk only if "they [had] filled out the 'Public Comment Form.'" *Id.* at 7, ¶ 24. If the topic about which the public member wanted to comment was not on the agenda, then that person was required to submit the topic in writing to the Superintendent ten days before the meeting, after which time the Board President and Superintendent would decide whether to add that topic to the agenda; if they did not, then rather than be allowed to speak publicly about it, "the individual who requested that the item be placed on the agenda [would] be contacted [privately] and directed to the appropriate school department that [was] best suited to handle such items." *Id.* at 7, ¶ 24.

By the fall of 2011, the Los Lunas School District Parent Discussion Page had become popular with District parents and had amassed approximately 180 members. *Id.* at 7, ¶ 25. Soon after its creation, Plaintiff Tachias received a telephone call from then-Board President Charles Tabet, inviting Plaintiffs to meet with him and then-Superintendent Bernard Saiz at his office. *Id.* at 7, ¶ 26. During the meeting, Mr. Tabet

4

told Plaintiff Tachias that the Los Lunas School District Parent Discussion Page was "poisonous," and he directed Plaintiffs to take down the page immediately. *Id.* When Plaintiff Tachias refused, she was shown a list of District employees who were members of the Los Lunas School District Parent Discussion Page and was told that if Plaintiffs declined to take down the page, the District would maintain a list of its employees who were members—implicitly threatening retaliation against any such District-employee members. *Id.* Immediately after the 2011 meeting with Mr. Tabet and Mr. Saiz, Plaintiff Dereta received messages from members of the Los Lunas School District Parent Discussion Page informing her that, because of their employment with the District, they had to leave the page or they would be fired. *Id.* at 8, ¶ 27.

Throughout Plaintiffs' facilitation of the Los Lunas School District Parent Discussion Page, Facebook's "About" description for the page stated that it was "[a] page that allows [the District] parents, grandparents, guardians and taxpayers to discuss, question, comment, praise, criticize, seek advice/opinion and share topics related to the [the District], education in general, be it positive or negative." *Id.* at 8, ¶ 28. Initially, the Los Lunas School District Parent Discussion Page was public. *Id.* at 8, ¶ 29. After Mr. Saiz and Mr. Tabet demanded that Plaintiffs take down the page and told them that they would maintain a list of District employees who were members of the page, Plaintiffs, under the options that Facebook had available at the time, "closed" the Los Lunas School District Parent Discussion Page, meaning that only page members could view the members of the page and the discussion on the page. *Id.* Closing the page allowed a person access to the page and to view the members only if another page "member" sent

an "invite" to grant a person access to the page. *Id.* As Facebook evolved, Plaintiffs changed membership acceptance to "Administrator approval only." *Id.*

Currently, before admission, members of the public who wish to join the Los Lunas School District Parent Discussion Page are required to answer three questions: (1) Are you a student?; (2) I understand this is NOT an "official" District sponsored or regulated page; and (3) Tell us why you want to join the group. *Id.* These questions ensure that persons admitted to the Los Lunas School District Parent Discussion Page are not students and have an interest in the District. *Id.* Most of the content on the Los Lunas School District Parent Discussion Page online social networking site is user-generated content that District parents, stakeholders, and community members believe may be important to others. *Id.* at 9, ¶ 30. The members engage actively in speech and expressive activity related to the District. *Id.* On any given day, multiple members post on the Los Lunas School District Parent Discussion Page. *Id.*

## II.    Report of District Principal Allegedly Threatening Student

On October 12, 2018, a community member posted on the Los Lunas School District Parent Discussion Page alleging that Jason Baca, principal of Valencia Middle School, had threatened a student. *Id.* at 9, ¶ 31. At that time, Dana Sanders ("Superintendent Sanders") was the superintendent of the Board. *Id.* at 5, ¶ 17. The Board members during this period included Defendant Smith, Defendant Frank Otero, Sonya C'Moya, Brandon Campanella, and Milo Moody. *See id.* at 10, ¶ 35.

On October 15, 2018, Superintendent Sanders sent a group text message to the Board members. *Id.* at 9, ¶ 32. The text message stated that Superintendent Sanders had contacted an attorney who performed work for the District, "Andy Sanchez," who was

"looking into some things," and that Superintendent Sanders was "looking at trying to figure out how to Trademark [sic] the Los Lunas Schools name." *Id.* Superintendent Sanders stated that she "want[ed] that removed from their FaceBook [sic] page." *Id.* at 9–10, ¶ 32. Board member Brandon Campanella responded in the group text to Superintendent Sanders's message stating, "That is a great idea." *Id.* at 10, ¶ 33. After the student's parents read the October 12 post, they called the student's school, and the story was picked up by news media. *Id.* at 10, ¶ 34. In response to an inquiry from news media, the District issued a statement saying that it would not comment on personnel issues to the press "and wanted to point out that the post was on a social media account created by 'disgruntled parents.'" *Id.*

On October 19, 2018, Superintendent Sanders sent a "Board Update" to Board members Defendant Smith, Defendant Frank Otero, Sonya C'Moya, Brandon Campanella, and Milo Moody. *Id.* at 10, ¶ 35. The update stated:

> I am sure that some of you have followed at least some of what is showing upon on the Los Lunas Schools parent discussion page, or as many have labeled it [THE HATERS PAGE]. At this point, it is unfortunate, but we will never be able to get to the bottom of what actually happened. No one, including the parent, contacted the school or Central Office until Sunday at 10:00 pm, and that was in an email. The incident occurred on Thursday and went crazy on the Facebook Page on Friday and during the weekend.

*Id.* The "Board Update" also stated that "[i]n addition, statements were being made on the page about a protest at last night's middle school football game between Los Lunas and Valencia Middle School, and possibly the board meeting." *Id.*

On October 30, 2018, Superintendent Sanders sent a letter to the parents of all District students regarding "Social Media Concerns," purportedly "to better serve and

inform parents/guardians regarding social media accounts that are not associated with the Los Lunas Schools." *Id.* at 11, ¶ 36. The letter stated, "There are several social media accounts namely on FaceBook [sic] and Twitter that are not connected or affiliated with the Los Lunas Schools." *Id.* The letter discussed only the Los Lunas Schools Parent Discussion Page, however, leveling the charge, among others, that,"[i]n some instances, such as the Los Lunas Schools Parent Discussion Page on FaceBook [sic], there is often inaccurate information, gossip, half-truths, and information posted. This page has become an outlet to circumvent the process to resolve issues and come to resolution regarding concerns." *Id.*

### III.    Application for and Issuance of Trademark

On October 22, 2018, four days after the news media reported on the allegations made against Jason Baca on the Los Lunas School District Parent Discussion Page and three days after Superintendent Sanders's update to the Board, Superintendent Sanders filed the District's application, serial No. 88164510, to trademark "Los Lunas Schools." *Id.* at 11, ¶ 37. The Identification for the trademark application listed that the mark would be trademarked for: "Education services, namely, providing pre-kindergarten through 12th grade (pre-K-12) classroom instruction." *Id.* at 11, ¶ 38. The Literal Element in the application was "Los Lunas Schools." *Id.* at 11, ¶ 39.

On July 9, 2019, the United States Patent and Trademark Office registered the "Los Lunas Schools" mark as Registration No. 5,798,193. *Id.* at 11, ¶ 40. The mark was registered as a service mark in connection with: "CLASS 41: Education services, namely, providing pre-kindergarten through 12th grade (pre-K-12) classroom instruction." *Id.* at

12, ¶ 41. The mark's owner was listed as "Los Lunas Schools (NEW MEXICO Public School), AKA Los Lunas Public Schools, LLS." *Id.* at 12, ¶ 42.

### IV.     The District's Attempts to Restrict Plaintiffs' Speech

On August 2, 2019, Superintendent Sanders sent a "Board Update for the Week of July 29 – August 2, 2019," to Board members Defendant Smith, Defendant Frank Otero, Ms. C'Moya, Mr. Campanella, and Mr. Moody. *Id.* at 12, ¶ 43. The first bullet point stated, "since we have been issued a Trademark for Los Lunas Schools," Superintendent Sanders asked Jacque Archuleta-Staehlin, who worked for the same law firm as Andy Sanchez referred to in the October 15, 2018, text message, to write cease and desist letters to the "owner of the Los Lunas School Parent Discussion Page." *Id.* Superintendent Sanders stated, "I expect that this will cause somewhat of a disturbance on that page. If you have objections to me sending the letter, please let me know as soon as possible." *Id.*

On August 23, 2019, Superintendent Sanders sent a "Board Update for the Week of August 19-23, 2019," labeled confidential. *Id.* at 12, ¶ 44. The first bullet point stated that Superintendent Sanders "received the Cease and Desist letter from our attorney. I have personalized two letters for the individuals who 'run' the page. I plan to send the letters out to them on Tuesday afternoon. Please let me know if you have objections to me sending the letter before Tuesday. I have attached a copy of the letter to this update." *Id.*

On August 29, 2019, Superintendent Sanders sent Board members the "Board Update for the Week of August 26-30, 2019," which was (again) labeled confidential. *Id.* at 13, ¶ 45. It stated, "The Cease and Desist letters to the 'owners' and 'operators' of the

'Haters' page were sent out on Thursday. I expect there will be quite an uproar from people that contribute to the page. Thank you for all of your support through this process." *Id*. Also, on August 29, 2019, Superintendent Sanders sent via United States Postal Service Certified Mail the identical cease and desist letters to Plaintiff Tachias and Plaintiff Dereta. *Id*. at 13, ¶ 46. In the cease-and-desist letter, Superintendent Sanders writes that the purpose of the letter is to inform Plaintiffs that "Los Lunas Schools reserves all rights to and is the owner of the trademarked term [sic] 'Los Lunas Schools' that was trademarked on July 9, 2019, and is registered under U.S. Trademark Registration No. 5, 798,193." *Id*. at 13, ¶ 47. A copy of the trademark was attached to the cease-and-desist letters. *Id*. The letter further states:

> It has been brought to our attention that you or others you communicate with made unauthorized use of the Los Lunas Schools trademark for purposes of criticizing and providing false information about the District [sic] Los Lunas School District Parents [sic] Discussion Page. Facebook page and use in other social media of the term "Los Lunas Schools" is confusing and misleading to those individuals who are searching for information regarding the school district and its operations and is considered an infringement upon the District's intellectual property rights.

> On behalf of the District, I therefore ask you to CEASE and DESIST from any and all unlawful acts and trademark infringement with regards to your actions, statements relating to the use of the term "Los Lunas Schools" or other aka names listed on the trademark.

> Failure to comply with this notice will confirm your complicity and force the District to take further legal action including filing of a civil lawsuit seeking monetary damages, court and attorneys' fees, incurred as a direct result of your unlawful actions of trademark infringement.

> The District will do all that is necessary to protest its rights regarding its registered trademark.

> THEREFORE, you are on notice to immediately CEASE and DESIST from further acts of infringement within 10 calendar days of today's notice and return the signed written assurance below that you will refrain from any and all further acts of infringement including removal of the unauthorized social media account on Facebook.

*Id.* at 13–14, ¶ 47.

On August 31, 2019, upon receiving the cease-and-desist letter, Plaintiffs immediately changed the name of the Los Lunas School District Parent Discussion Page to "PARENT DISCUSSION PAGE OF LOCAL PUBLIC SCHOOLS." *Id.* at 14, ¶ 48. Additionally, Plaintiff Tachias was forced to engage the services of an attorney, Jose Garcia, Esq., to respond to the cease-and-desist letter. *Id.* at 14, ¶ 49. On September 19, 2019, Mr. Garcia wrote a letter to the attorney who Superintendent Sanders copied on the cease-and-desist letter. *Id.* at 14, ¶ 50. Among other things, Mr. Garcia advised the attorney that the breadth with which Superintendent Sanders and the District contended that the "Los Lunas Schools" trademark could be enforced lacked support in the law. *Id.* Mr. Garcia also asserted that, to the extent the District was properly granted a trademark, enforcement of the trademark to require Plaintiffs to take down their page and prohibit them and others from engaging in speech about the District violates Plaintiffs' First Amendment rights. *Id.* Mr. Garcia invited the attorney to contact Plaintiff Tachias directly to discuss revoking the cease-and-desist letter and resolving the dispute. *Id.* No one from the District or the Board accepted Mr. Garcia's invitation to resolve the matter. *Id.*

On September 30, 2019, Plaintiffs changed the name of the page back to "Los Lunas School District Parent Discussion Page." *Id.* at 14, ¶ 51. Additionally, Plaintiffs revised the "about" section of the Los Lunas School District Parent Discussion Page to

make clear that the page "is not in any way 'Officially' sponsored by, represents or by any other means is meant to confuse, mislead or misrepresent any local Public School District in Valencia County." *Id.* at 15, ¶ 52. On or about October 10, 2019, in response to media inquiry about the trademark dispute, the District issued a "Media Statement" about the Los Lunas School District Parent Discussion Page and its trademark. *Id.* at 15, ¶ 53. The Media Statement stated that the Los Lunas School District Parent Discussion Page "site is one of the first pages that appears" when a person searches Facebook, and that it "is often mistaken as a forum that is monitored and approved by district officials." *Id.* The Media Statement states that the information on the page "causes issues with the orderly operations of individual schools and the district." *Id.*

Since October 2019, attorneys representing Plaintiffs have engaged with multiple attorneys for the District and District officials to resolve the dispute between Plaintiff Tachias, Plaintiff Dereta, and Defendants related to the District's trademark. *Id.* at 15, ¶ 54. These discussions have been unavailing, and Defendants continue to threaten that they will use the purported trademark of "Los Lunas Schools" to force Plaintiffs to "refrain from any and all further acts of infringement including removal of the unauthorized social media account on Facebook." *Id.*

As of January 21, 2021, the District and/or the Board have issued cease and desist letters to enforce their purported trademark of "LOS LUNAS SCHOOLS" to only Plaintiff Tachias and Plaintiff Dereta to demand that they remove the Los Lunas School District Parent Discussion Page. *Id.* at 15–16, ¶ 55. As of January 21, 2021, the District has no public guidance on how any person may license the "Los Lunas Schools" mark or guidelines that advise any person how to use the "Los Lunas Schools" mark. *Id.* at 16, ¶

56. The Board has in place Policy 6.18 titled "Policy on Intellectual Property." *Id*. The "Policy on Intellectual Property," however, which was approved in 1997 and last revised in 2008, does not address the use of any trademark. *Id*.

As of January 13, 2021, the first result that a person who searches "los lunas schools" on Facebook sees is the "Los Lunas Schools" page, which has a "verified badge" next to the page's name. *Id*. at 16–17, ¶ 57. The Los Lunas School District Parent Discussion Page is found 11 results below, after two sponsored search results, the "Sandoval County Emergency Management" page, and a series of "Photos" related to the search. *Id*. at 17, ¶ 57. The Los Lunas School District Parent Discussion Page does not contain a verified badge next to its name. *Id*.

As of January 21, 2021, the Los Lunas School District Parent Discussion Page had approximately 3,200 members. *Id*. at 17, ¶ 58. This membership in a private social networking page shows the Los Lunas School District Parent Discussion Page's importance in providing a space for District stakeholders and community members to exercise their First Amendment free-speech rights. *Id*.

## PROCEDURAL BACKGROUND

On February 2, 2021, Plaintiffs filed this action asserting a 42 U.S.C. § 1983 ("Section 1983") claim for retaliation in violation of the First Amendment to the United States Constitution. *See generally* ECF No. 1. Plaintiffs seek monetary, declaratory, and injunctive relief. *Id*. at 19–20. On July 14, 2021, Defendants filed their Motion seeking dismissal of the First Amendment claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(c). ECF No. 27. Plaintiffs filed their Response on August 30, 2021, and Defendants filed their Reply on November 30, 2021. ECF Nos. 35, 45.

**PARTIES' ARGUMENTS**

Defendants' Motion seeks to dismiss the First Amendment claim against them pursuant to Rule 12(c). ECF No. 27 at 1. Specifically, Defendants argue: (1) Plaintiffs fail to state a claim against either Defendant for any and all conduct or events alleged to have occurred prior to February of 2018 because all claims based upon such conduct are barred by the statute of limitations; (2) Plaintiffs fail to state a claim against either Defendant because there are no facts to show any personal involvement by these Defendants in the alleged misconduct; (3) Defendants are entitled to absolute legislative immunity and judgment on the pleadings for any and all conduct or actions taken in the sphere of their legislative activities; (4) Defendants are entitled to qualified immunity and judgment on the pleadings because Plaintiffs cannot show that either Defendant violated a constitutional right and cannot show that the right they seek to assert was clearly established at the time of the alleged misconduct; and (5) the official capacity claims against each Defendant are the same as Plaintiffs' claims against the Los Lunas Schools Board of Education and should be dismissed because they are redundant. *Id.* at 16–27.

As to argument (1), Plaintiffs assert that they do not bring claims based on conduct before February 2018. ECF No. 35 at 9. Rather, their Complaint details conduct prior to February 2018 to provide relevant background and context that led to Plaintiffs' actionable claims. *Id.* As to argument (3), Plaintiffs contend they are not bringing any claims based on any official policy Defendants enacted as Board members in 2011. *Id.* at 25. Plaintiffs state allegations relating to the 2011 policy to limit public comment at Board meetings merely provides context to establish Defendants' retaliatory motive "in legally harassing Plaintiffs by threatening suit in the cease-and-desist letters." *Id.* As to argument (5),

Plaintiffs do not object to dismissing the official capacity claims against Defendants. *Id.* Indeed, the parties have stipulated to, and the Court has already granted, dismissal of the claims against Defendant Smith and Defendant Frank Otero in their official capacity. ECF Nos. 48, 49. As such, the Court determines the Motion is denied as moot as to arguments (1), (3), and (5).

Regarding argument (2), Plaintiffs argue their allegations state a claim under Section 1983 for Defendants Smith's and Defendant Frank Otero's personal participation in the unconstitutional retaliation, as well as a claim for supervisory liability for the unconstitutional activity. ECF No. 35 at 15. And as to argument (4), Plaintiffs contend that the unconstitutionality of Defendant Smith and Defendant Frank Otero's retaliation against Plaintiffs for exercising their First Amendment rights on a Facebook Page that Plaintiffs administered was clearly established when the violation occurred. *Id.* at 20.

## LEGAL STANDARD

Rule 12(c) provides that "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." A motion for judgment on the pleadings pursuant to Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6). *Atl. Richfield Co. v. Farm Credit Bank of Wichita,* 226 F.3d 1138, 1160 (10th Cir. 2000). According to Rule 12(b)(6), a party may move for dismissal if the complaint fails "to state a claim upon which relief can be granted." To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not impose a probability requirement, but it demands "more than a sheer possibility that a defendant

has acted unlawfully." *Id.* Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. Although the court must accept the truth of all properly alleged facts and draw all reasonable inferences in the plaintiff's favor, the plaintiff still "must nudge the claim across the line from conceivable or speculative to plausible." *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).

## DISCUSSION

**I.    Plaintiffs fail to allege sufficient facts to establish personal or supervisory liability as to Defendant Smith and Defendant Frank Otero.**

### A.  Applicable Law

The Civil Rights Act, codified at 42 U.S.C. § 1983, provides in relevant part that "[e]very person who, under color of any statute . . . subjects . . . any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . ." Thus, Section 1983 creates a federal cause of action for damages to vindicate alleged violations of federal law committed by individuals acting "under color of state law." *See Wyatt v. Cole*, 504 U.S. 158, 161 (1992) ("[T]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."); *Owen v. City of Independence*, 445 U.S. 622, 650 (1980) (Section 1983 was designed "to provide protection to those persons wronged by the '[m]isuse of power'"). The statute "creates no substantive civil rights, only a procedural mechanism for enforcing them." *Wilson v. Meeks*, 52 F.3d 1547, 1552 (10th Cir. 1995).

16

A defendant sued in their individual capacity under Section 1983 may be subject to personal liability and/or supervisory liability. *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Personal liability "must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997). However, such "personal involvement is not limited solely to situations where a defendant violates a plaintiff's rights by physically placing hands on him." *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010) (quoting *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008)) (internal quotation marks and brackets omitted). "Personal involvement does not require direct participation because § 1983 states any official who causes a citizen to be deprived of her constitutional [or other federally protected] rights can also be held liable." *Id.* (quoting *Buck v. City of Albuquerque*, 549 F.3d 1269, 1279 (10th Cir. 2008)) (internal quotation marks omitted).

Indeed, "[s]ection [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions." *Martinez v. Carson*, 697 F.3d 1252, 1255 (10th Cir. 2012) (quoting *Monroe v. Pape*, 364 U.S. 167, 187 (1961)). Thus, "[t]he plaintiff may demonstrate causation by showing an affirmative link between the constitutional deprivation and the [defendant's] exercise of control or direction." *Mink v. Knox*, 613 F.3d 995, 1001 (10th Cir. 2010). "The requisite causal connection [may also be] satisfied if the defendant[s] set in motion a series of events that the defendant[s] knew or reasonably should have known would cause others to deprive the plaintiff of [their] constitutional rights." *Trask v. Franco*, 446 F.3d 1036, 1046 (10th Cir. 2006) (quoting *Snell v. Tunnell*, 920 F.2d 673, 700 (10th Cir. 1990)). Consequently, defendants are liable for the harm proximately caused by their conduct. *Martinez*, 697

F.3d at 1254 (citing *Trask*, 446 F.3d at 1046). The fact the "[t]hat conduct of other people may have concurrently caused the harm does not change the outcome as to [the defendants]." *Martinez*, 698 F.3d at 1254 (citing *Lippoldt v. Cole*, 468 F.3d 1204, 1220 (10th Cir. 2006)).

Supervisory liability, on the other hand, "allows a plaintiff to impose liability upon a defendant-supervisor who creates, promulgates, implements, or in some other way possesses responsibility for the continued operation of a policy [or plan] the enforcement (by the defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected' that plaintiff 'to the deprivation of any rights . . . secured by the Constitution . . . .'" *Dodds*, 614 F.3d at 1199; *Rizzo v. Goode*, 423 U.S. 362, 373–75 (1976). However, supervisory status alone is insufficient to support a claim for relief. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, there must be "an 'affirmative link' between the constitutional violation and 'either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise.'" *Dodds*, 614 F.3d at 1211 (Tymkovich, J., concurring) (internal citations omitted). The requisite showing of an "affirmative link" between a supervisor and the alleged constitutional injury has "[come] to have three related prongs: (1) personal involvement, (2) sufficient causal connection, and (3) culpable state of mind." *Cox v. Glanz*, 800 F.3d 1231, 1248 (10th Cir. 2015) (quoting *Dodds*, 614 F.3d at 1195). However, Section 1983 has no state-of-mind requirement independent of that necessary to establish a violation of the underlying constitutional right. *Daniels v. Williams*, 474 U.S. 327, 328 (1986).

### B. Analysis

Accepting the factual allegations in the Complaint as true and drawing all reasonable inferences therefrom in the Plaintiffs' favor, the Court determines that Plaintiffs fail to allege sufficient facts to establish personal or supervisory liability as to Defendant Smith and Defendant Frank Otero.

Plaintiffs' Complaint plausibly alleges that Defendant Smith and Defendant Frank Otero were involved in a group text message exchange on October 15, 2019, whereby Superintendent Sanders informed members of the Board—including Defendant Smith and Defendant Frank Otero—that she had contacted an attorney to "look[] into some things," and that she was "trying to figure out how to Trademark[sic] the Los Lunas Schools name" to have "[Los Lunas Schools] removed from their FaceBook [sic] page." *See* ECF No. 1 at 9–10, ¶ 32. The Complaint also plausibly alleges that on October 19, 2018, Defendant Smith and Defendant Frank Otero received a "Board Update" from Superintendent Sanders regarding an update on the situation involving the Facebook page. *Id.* at 10, ¶ 35. The Complaint further alleges that on August 2, 2019, Defendant Smith and Defendant Frank Otero received another Board Update from Superintendent Sanders informing Defendants that "since we have been issued a Trademark for Los Lunas Schools," Superintendent Sanders asked an attorney to write cease and desist letters to the owners of the Los Lunas School Parent Discussion Page. *Id.* at 12, ¶ 43. The Board Update goes on to state, "I expect that this will cause somewhat of a disturbance on that page. If you have objections to me sending the letter, please let me know as soon as possible." *Id.* There is no mention of objection by either Defendant Smith or Defendant Frank Otero. *See id.*

19

The Complaint plausibly alleges that on August 23, 2019, Defendant Smith and Defendant Frank Otero received a Board Update from Superintendent Sanders informing Defendants that Superintendent Sanders received the cease-and-desist letters from an attorney and that she planned to send the letters to Plaintiff Tachias and Plaintiff Dereta on Tuesday afternoon. *Id.* at 12, ¶ 44. The Board Update further states, "Please let me know if you have objections to me sending the letter before Tuesday. I have attached a copy of the letter to this update." *Id.* There is no mention of objection by either Defendant Smith or Defendant Frank Otero. *See id.*

Moreover, the Complaint plausibly alleges that on August 29, 2019, Defendant Smith and Defendant Frank Otero received a Board Update from Superintendent Sanders stating: "The Cease and Desist letters to the 'owners' and 'operators' of the 'Haters' page were sent out on Thursday. . . .Thank you for all of your support through this process." *Id.* at 13, ¶ 45. Lastly, when Plaintiffs obtained an attorney to respond to the cease-and-desist letter, the Complaint plausibly alleges that Defendant Smith and Defendant Frank Otero declined the attorney's invitation to resolve the matter. *Id.* at 14, ¶ 50.

As to personal liability of Defendant Smith and Defendant Frank Otero, Plaintiffs fail to establish Defendants' personal involvement in the alleged constitutional violation. Plaintiffs' Complaint asserts that Defendant Smith and Defendant Frank Otero received text messages and Board Updates from Superintendent Sanders—from inception to execution—regarding the plan to trademark "Los Lunas Schools" and issue cease-and-desist letters to Plaintiffs. The allegations taken collectively demonstrate that Defendant Smith and Defendant Frank Otero were—at the least—passive recipients of information or—at the most—in tacit approval of the plan. Without more, Plaintiffs' Complaint fails to

assert any actions or omissions personally taken by Defendant Smith or Defendant Frank Otero to have caused the alleged constitutional violation. *See Mink*, 613 F.3d at 1001.

Furthermore, Plaintiffs fail to establish supervisory liability of Defendant Smith and Defendant Frank Otero. As an initial matter, Plaintiffs have not alleged that Defendant Smith or Defendant Frank Otero held a supervisory role over Superintendent Sanders or any other individuals alleged to have partaken in the actions that led to the alleged constitutional violation. Additionally, even if Plaintiffs' Complaint can be properly construed to allege that Defendant Smith or Defendant Frank Otero held a supervisory role over Superintendent Sanders, Plaintiffs fail to allege facts to demonstrate that Defendants themselves had a culpable state of mind—i.e., a retaliatory motive. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1203 (10th Cir. 2007). Indeed, a defendant-supervisor who acquiesced in a constitutional violation is liable only if the defendant-supervisor shared the same "state of mind" with the subordinates who actually committed the violation. *Dodds*, 614 F.3d at 1210–12 (Tymkovich, J., concurring); *Serna v. Colorado Department of Corrections*, 455 F.3d 1146, 1151–52 (10th Cir. 2006).

In conclusion, Plaintiffs fail to establish personal or supervisory liability as to Defendant Smith and Defendant Frank Otero. Therefore, the Court will dismiss the individual capacity claims against Defendant Smith and Defendant Frank Otero. As such, the Court will not—at this time—determine whether Defendants are entitled to qualified immunity.

## II.    The Court sua sponte allows Plaintiffs leave to amend their Complaint.

Plaintiffs are represented by counsel, but have not requested, through motion or otherwise, leave to amend their Complaint. "In dismissing a complaint for failure to state

a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" *Triplett v. LeFlore Cty., Okla.*, 712 F.2d 444, 446 (10th Cir. 1983) (quoting 3 Moore's Federal Practice, ¶ 15.10 & n. 2 (1983)). However, "outside of the pro se context, when a litigant fails to put the district court on adequate notice—in a legally cognizable manner—of his request for leave to amend, then the district court will not be faulted for failing to grant leave to amend." *Doe v. Heil*, 533 F. App'x 831, 847 (10th Cir. 2013). Therefore, it would be within the Court's discretion to refuse to grant leave to amend sua sponte. *Sullivan v. DaVita Healthcare Partners, Inc.*, 780 F. App'x 612, 616 (10th Cir. 2019); Doe, 533 F. App'x at 847 ("[W]e will not upset the district court's dismissal with prejudice on the grounds that it failed sua sponte to give [plaintiff]—who was represented by counsel—an opportunity to file an amended complaint."). However, given that Plaintiffs have not amended their Complaint, the Court cannot, at this juncture, find that permitting amendment would prove futile. Therefore, the Court is dismissing the individual capacity claims against Defendant Smith and Defendant Frank Otero with leave to file, if Plaintiffs so choose, an amended Complaint no later than 30 days from the issuance of this Order.

## CONCLUSION

For the foregoing reasons, Defendants' Motion and Memorandum for Judgment on the Pleadings on the Basis of Failure to State a Claim, Qualified Immunity, Legislative Immunity, and the Statute of Limitations, ECF No. 27, is hereby **GRANTED**. Plaintiffs' individual capacity claims against Defendant Smith and Defendant Frank Otero are **DISMISSED WITHOUT PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiffs shall have **30 DAYS** from the date of this Order to file an amended Complaint**.** If Plaintiffs do not file an amended Complaint within 30 days, the individual capacity claims against Defendant Bryan and Defendant Frank Otero shall be dismissed with prejudice.

**IT IS SO ORDERED.**

**MARGARET STRICKLAND**
UNITED STATES DISTRICT JUDGE